IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SQUIRES GOLF CLUB, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 10-2579 |
| v. | : | |
| BANK OF AMERICA, | : | |
| Defendant. | : | |

O'NEILL, J.                                                       JULY 14, 2010

## MEMORANDUM

Plaintiff Squires Golf Club brought suit against defendant Bank of America in the Montgomery County Court of Common Pleas to recover damages for an alleged violation of the Pennsylvania Mortgage Satisfaction Act, 21 Pa. Cons. Stat. § 721-6 (2003). On May 28, 2010, defendant removed the case to this Court and subsequently filed this motion to dismiss. Presently before me are defendant's motion to dismiss, plaintiff's response, defendant's reply and plaintiff's sur-reply. For the following reasons, I will grant defendant's motion.

## BACKGROUND

On or about July 1, 1998, Prime Bank, predecessor-in-interest to defendant, loaned $1,750,000.00 to plaintiff. Compl. ¶ 4. The parties signed a promissory note that contained a prepayment fee provision establishing certain financial penalties which would result from any prepayment of the principal amount of the loan by plaintiff. Def.'s Br. Ex. 2. The note contained a handwritten provision, however, which was dated and initialed by representatives of both plaintiff and Prime Bank. The provision stated: "[b]orrower can make principal reductions at any time without penalty, so long as the reduction is not through a refinance with another institution."

Id. The loan from Prime Bank was secured by a mortgage on property owned by plaintiff, and a mortgage document was signed and executed by the parties on July 16, 1998. Compl. Ex. A.

At some point after the execution of the promissory note and mortgage, defendant acquired plaintiff's mortgage. Defendant sent plaintiff two payoff statements dated November 17, 2009 and December 18, 2009 which specified the total amount due in order to satisfy the loan. Compl. Exs. B and C. Neither document stated that there was a prepayment fee. Id. The statements did contain a disclaimer, however, which stated in relevant part that ". . . in the event of error or omission, the Bank does not, in any way, prejudice its rights or entitlement to all moneys lawfully due under terms of any credit documents." Id.

On December 29, 2009, plaintiff refinanced with Continental Bank. Compl. ¶¶ 7, 10. Using the funds from this refinancing, plaintiff paid defendant $1,127,903.73–the total amount due according to the December 18, 2009 payoff statement. Compl. ¶ 9. Plaintiff asserts that its decision to refinance with Continental Bank was made in reliance on the fact that defendant's payoff statements did not contain any reference to a prepayment penalty. Compl. ¶ 10.

In a letter dated February 8, 2010, defendant informed plaintiff that a prepayment fee of $139,421.24 was due because plaintiff had paid off its loan with funds obtained through refinancing. Compl. Ex. D. Defendant further explained that it had "omitted the prepayment fee from the payoff letter[s] . . . based on information confirmed by [plaintiff] that the funds to repay the loan would be obtained from private sources." Id. Defendant's letter informed plaintiff that, upon receipt of the prepayment fee, the mortgage lien on plaintiff's property would be released. Id. Plaintiff refused to pay the prepayment fee, claiming that if defendant had notified it of the fee it would have used private funding to pay the debt. Compl. Ex. E. Plaintiff demanded that

2

defendant satisfy the mortgage, and defendant refused to do so. Id.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," although plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id., citations omitted.

The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), citing Iqbal, 129 S. Ct. at 1949. "To prevent dismissal, civil complaints must set forth 'sufficient factual matter' to show that the claim is facially plausible." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1949, internal quotations omitted.

ANALYSIS

I.       Pennsylvania Mortgage Satisfaction Act

The Pennsylvania Mortgage Satisfaction Act provides that once a mortgagee has received ". . . payment of the entire mortgage obligation and tender of all required satisfaction and recording costs. . ." that mortgagee must issue and record a "duly executed satisfaction piece," i.e. a document which certifies that the mortgage obligation has been satisfied. 21 Pa. Cons. Stat. § 721-4. If, within 60 days of the mortgagee's receipt of "payment of the entire mortgage obligation and all required satisfaction and recording costs" and a written request by the mortgagor for the satisfaction document the mortgagee fails to issue and record that certification of mortgage satisfaction, "the mortgagee shall forfeit and pay to the mortgagor a penalty in a sum not exceeding the original loan amount." 21 Pa. Cons. Stat. § 721-6.

II.      Application

     A.      Contractual Interpretation

The dispositive question for the purposes of defendant's motion to dismiss is whether plaintiff's prepayment penalty fee which was activated by its refinancing with Continental Bank is part of "the entire mortgage obligation." If the fee is part of this obligation, then plaintiff has not stated a claim under the MSA. See O'Donoghue v. Laurel Savings Ass'n, 728 A.2d 914, 917 (Pa. 1999) (holding that in order to prove entitlement to the statutory fine under the MSA for a mortgagee's failure to satisfy, the mortgagor must demonstrate that he or she has paid all sums due and owing pursuant to the mortgage); see also St. Clement's Bldg. & Loan Ass'n. v. McCann, 190 A. 393, 394 (Pa. Super. Ct. 1937) (holding that a mortgage should not be satisfied until it has been fully paid). The interpretation of the unambiguous language of the handwritten

4

prepayment penalty provision of the contract is a matter of law appropriate for disposition by the Court. Simon Wrecking Co. v. AIU Ins. Co., Civ. A. No. 03-cv-3231, 2005 WL 396566, at *1 (E.D. Pa. Feb. 16, 2005) (additional citations omitted).

The "Full Performance" section of the mortgage provides that defendant will release its interest in plaintiff's property only if plaintiff "pays all the [i]ndebtedness when due." Compl. Ex. A at 5. The mortgage defines "[i]ndebtedness" as "all principal and interest payable under the [promissory note] . . . [as well as] all obligations, debts and liabilities, plus interest thereon . . ." owed by plaintiff to defendant. Id. at 2. The term "[i]ndebtedness" as used in the mortgage is synonymous with "the entire mortgage obligation" as used in the MSA. In other words, in order for plaintiff to have satisfied its entire mortgage obligation–and therefore to state a claim under the MSA–it must have satisfied all of its indebtedness under the contract.

The handwritten provision to the promissory note, which was initialed and dated by a representative of plaintiff, clearly stated that plaintiff would be subject to a prepayment fee if it refinanced with a different financial institution and then used the funds obtained through that refinancing to make reductions on the principal. When plaintiff refinanced with Continental Bank and used the funds obtained in that refinancing to pay off the principal owed to defendant, that prepayment fee became a part of "the entire mortgage obligation." Accordingly, I find that plaintiff has not satisfied the entire mortgage obligation and thus cannot state a claim under the MSA.

  B. Plaintiff's Counter-arguments

Plaintiff makes three arguments to the contrary, each of which is unavailing.

1. Evidence of an Undocumented Understanding Between Plaintiff and Prime Bank is Inadmissible

Plaintiff claims that an "understanding" existed with Prime Bank (defendant's predecessor-in-interest), whereby Prime Bank agreed that "as long as [plaintiff] had the private funds available to pay off the loan, Prime Bank would not seek the prepayment penalty, even if [plaintiff] did not use the funds to pay off the loan." Pl.'s Br. at 2. This purported "understanding" is not only absent from the factual allegations in plaintiff's complaint, but also does not appear in either the promissory note or the mortgage document itself. Proof of this unwritten "understanding" is therefore barred by the parole evidence rule.

Under Pennsylvania law, an unambiguous written contract must be interpreted as expressing all pre-existing negotiations, conversations and agreements between the contracting parties and oral testimony is not admissible to explain or change the terms of that agreement. See Hart v. Arnold, 884 A.2d 316, 341 (Pa. Super. Ct. 2005). The parol evidence rule applies when a written document is determined to constitute the entire agreement between the parties. See Yoca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-437 (Pa. 2004); see also Mellon Bank Corp. v. First Union, 951 F.2d 1399, 1405 (3rd Cir. 1991) (citing Gianni v. R. Russel & Co., 126 A. 791 (Pa. 1924)) (holding that parol evidence must be excluded where a contract represents the "whole engagement of the parties . . . reduced to writing").

First Philadelphia Realty Corp. v. Albany Sav. Bank, 609 F. Supp. 207 (E.D. Pa. 1985), is instructive on the application of the parol evidence rule. There, the plaintiff sought to introduce parol evidence to interpret a prepayment penalty in a manner that was inconsistent with the plain language of the provision. The Court refused to do so because to give the otherwise

unambiguous prepayment provision the meaning asserted by the plaintiff would have been to "render the prepayment clause a nullity." Id. at 211. Similarly in the present case, plaintiff's purported "understanding" with Prime Bank that contrary to the clear language of the handwritten provision plaintiff would not be penalized for using funds obtained through refinancing as long as it had sufficient private funds on hand would negate the plain meaning of the prepayment provision and render it a nullity. Therefore, plaintiff may not introduce this parol evidence to interpret the handwritten prepayment provision.

The existence of an integration clause in the mortgage document supports the exclusion of parol evidence. An integration clause, which is an explicit statement that the document constitutes the entire agreement between the parties, is "a clear sign that the writing is meant to . . . express[] all of the parties' negotiations, conversations, and agreements prior to its execution." Yoca, 854 A.2d at 436. The mortgage document contains an integration clause which states that "[t]his Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment." Compl. Ex. A at 7. This integration clause, taken together with the unambiguous language of the handwritten provision, demonstrates that the promissory note and mortgage document constitute the entire agreement between the parties. The parol evidence rule therefore bars plaintiff from introducing extrinsic evidence of an unwritten "understanding" between itself and Prime Bank in order to construe the

meaning of the unambiguous handwritten provision regarding the prepayment penalty.[1]

In a related argument, plaintiff asserts that it did in fact have adequate private funds on hand to satisfy the remaining debt to defendant. Given my holding with respect to the inadmissibility of parol evidence, plaintiff's assertion is irrelevant.

2. Countrywide Home Loans, Inc. v. Bank One, N.A. is Inapposite

Plaintiff next argues that Countrywide Home Loans, Inc. v. Bank One, N.A., 661 S.E.2d 259 (N.C. 2008), is dispositive of this case. I disagree for two reasons. First, the Countrywide Court based its decision on North Carolina law, not Pennsylvania law. Second, Countrywide is factually distinguishable from the instant case. In Countrywide, Mr. and Mrs. Friedman, a married couple, owned a residential home encumbered by a deed of trust held by the defendant Bank One. Id. at 261. After defaulting on the loan secured by the deed, the couple contracted to sell the property to their daughter, who obtained the purchase money in a loan from the plaintiff Countrywide Home Loans. Id. Countrywide intended to satisfy the loan securing the deed of trust held on the property by Bank One. Id. An erroneous calculation in a letter sent by the

---

[1] The parol evidence rule applies with special force to this case because standardization of mortgages is important to the maintenance of a secondary market in mortgage-backed securities. See David Reiss, Subprime Standardization: How Rating Agencies Allow Predatory Lending to Flourish in the Secondary Mortgage Market, 33 Fla. St. U. L. Rev. 985, 1001-05 (2006) (explaining the process of securitization–i.e., "the aggregation and pooling of assets with similar characteristics in such a way that investors may purchase interests or securities backed by those assets."). If mortgages were interpreted to include unwritten "understandings" between the parties, their value on the secondary market would be reduced because, in order for an investor to have confidence in the value of a mortgage, the terms of the agreement must be readily apparent. See id. at 1005 ("To be attractive to investors, each mortgage would require its own extensive and expensive evaluation and monitoring, as each typically has its own unique terms and risks. These unique characteristics would make mortgages of limited interest on secondary markets that rely on standardization to reduce the transaction costs associated with conveying assets from one party to another.").

lawyers representing Bank One resulted in the omission of $100,000.00 from the total amount due on the loan. Id. Countrywide's attorney made multiple attempts to determine whether the letter represented the correct amount due and was ultimately assured that if there was a problem with the payoff amount he would be informed of such problem prior to closing. Id. at 261-262. At the time of the closing, Mr. Friedman was unaware that Bank One's demand was too low. In fact, he protested several times that it was too high. Id. at 262. Four to six weeks after the closing, Bank One discovered their error and refused to cancel their deed of trust, precipitating the lawsuit. Id. Relying on the doctrine of estoppel, the North Carolina Appeals Court held that the payment of the erroneous amount contained in Bank One's letter prevented them from further enforcing their deed of trust. Id. at 263-264.

    Countrywide is factually distinguishable from the present case in two ways. First, the plaintiff in Countrywide exercised due diligence in attempting to determine if the amount quoted in the defendant's letter was the correct total debt. Therefore, when the defendant neglected to correct its mistake before the closing the plaintiff was justified in relying on the erroneous debt computation and the defendant was then estopped from collecting the funds it had erroneously omitted. Indeed, in granting its verdict for the plaintiff on estoppel grounds the Countrywide Court concluded that the plaintiff "did not know and had no way of knowing" that the debt calculation was incorrect. Id. at 264. The present case is different. One of the factors the Countrywide Court required of the party claiming the estoppel was "lack of knowledge and the means of knowledge of the truth of the facts in question." Id. at 263. Here, plaintiff clearly had actual knowledge of the handwritten provision to the promissory note regarding the prepayment penalty as evidenced by its representative having initialed and dated the provision. Moreover,

unlike in Countrywide where the plaintiff made multiple attempts to clarify the terms of its obligation plaintiff here made no such inquiry. Under such circumstances, plaintiff was not justified in relying on an omission of the penalty from the payoff letters. Plaintiff's reliance was especially unjustified because defendant included a disclaimer in those letters stating ". . . in the event of error or omission, the Bank does not, in any way, prejudice its rights or entitlement to all moneys lawfully due under terms of any credit documents." Compl. Exs. B and C.

Second, in the instant case defendant's payoff letters were sent before plaintiff refinanced with Continental Bank. Compl. ¶¶ 5-8. Therefore, the payoff letters sent by defendant were not erroneous when they were sent. On the contrary, the payoff letters accurately represented the full amount that plaintiff owed on the mortgage loan at the time the letters were sent. The prepayment penalty fee was not triggered until on or about December 29, 2010, when plaintiff refinanced with Continental and then used the funds obtained in that refinancing to pay off the principal owed to defendant. Compl. ¶¶ 8-9. Approximately one month after plaintiff paid off the principal owed to defendant with funds obtained through refinancing, defendant correctly informed plaintiff that it had activated the agreed-upon prepayment penalty fee and must therefore pay that fee before defendant would satisfy the mortgage. Compl. Ex. D.

Plaintiff's reliance on Countrywide is thus unpersuasive. Unlike in Countrywide, where the plaintiff relied on an outright error, here defendant transmitted information to plaintiff that was accurate at the time that information was generated. At the time it sent the payoff letters defendant could not have known that plaintiff would trigger the prepayment penalty by refinancing.

### 3. Plaintiff Had Timely Notice of the Default

Finally, plaintiff argues that defendant failed to notify it of its default and failed to give it an opportunity to cure.[2] Pl.'s Br. 11-13. The promissory note contained provisions which imposed obligations on defendant as the lender to notify plaintiff as the borrower of any default and, under certain circumstances, provide plaintiff an opportunity to cure that default. Def.'s Br. Ex. 2. The text of the promissory note relating to curing a default states that "[i]f any default . . . is curable and if [plaintiff] has not been given notice of a breach of the same provision of this Note within the preceding twelve (12) months it may be cured . . . ." Def.'s Br. Ex. 2. Assuming *arguendo* that plaintiff's refinancing with Continental and its use of the funds obtained in that refinancing to pay off the principal constituted a default, a dubious proposition, plaintiff did in fact receive timely notice of its breach of the handwritten prepayment provision. The February 8, 2010 letter from defendant to plaintiff clearly notified plaintiff that it was in breach of the handwritten provision relating to the prepayment penalty. Compl. Ex. D. Therefore, per the language of the agreement, plaintiff's opportunity to cure the default ended when plaintiff received defendant's February 8, 2010 letter. Plaintiff's argument is thus unavailing.

### CONCLUSION

Taking the well-pleaded facts alleged in the complaint as true, plaintiff has failed to state a claim under the MSA. As discussed more fully above, to establish a claim under the MSA, a plaintiff must prove that it has fully paid "the entire mortgage obligation." 21 Pa. Cons. Stat. § 721-4. I find that the unpaid prepayment penalty fee is a part of plaintiff's mortgage obligation to

---

[2] I note that this assertion was not made in plaintiff's complaint and was only included in plaintiff's memorandum of law in opposition to defendant's motion to dismiss.

defendant. Therefore, plaintiff cannot state a claim under the MSA because it has failed to satisfy its full financial obligation to defendant under the terms of the agreement.

An appropriate Order follows.